UNITED STATES of America, and Law-
nie C. Mayhew, Special Agent of the
Internal Revenue Service, Petitioners,

v.

Jack HORTON and Schonert Construc-
tion, Inc., Respondents.

No. CV78–1004–RMT.

United States District Court,
C. D. California.

June 9, 1978.

Andrea Sheridan Ordin, U. S. Atty., Charles H. Magnuson, Asst. U. S. Atty., Chief, Tax Div., Mason C. Lewis, Asst. U. S. Atty., Los Angeles, Cal., for petitioners.

Ronald K. Van Wert, Irvine, Cal., for respondents.

## OPINION

TAKASUGI, District Judge.

Petitioners United States of America and Lawnie C. Mayhew, a Special Agent of the Internal Revenue Service, brought this action for enforcement of an Internal Revenue summons under §§ 7402(b) and 7604(a) of the Internal Revenue Code of 1954, 26 U.S.C. The summons, issued to respondent Jack Horton, demanded production of certain financial records and work papers of Schonert Construction Inc. [Schonert]. Mr. Horton, at all times relevant to this matter, was the President of Schonert. The alleged purpose of the summons was to determine Schonert's income tax liability for the years 1974 through 1977.

In response to petitioners' action, Mr. Horton raised the following questions: 1) whether the summons was issued for the improper purpose of obtaining evidence for a criminal prosecution, 2) whether the government already possessed the information contained in the documents thereby precluding production, 3) whether the government failed to follow administrative steps required by law, 4) whether enforcement of the summons would violate Fourth Amendment rights to be secure from unreasonable searches and seizures, and 5) whether enforcement of the summons would violate Fifth Amendment rights against self-incrimination. Additionally, Mr. Horton moved for the return of seized records and suppression of evidence in the possession of the IRS under § 7609 of the Internal Revenue Code of 1976, 26 U.S.C.

## FACTS FROM THE EVIDENCE

Special Agent Mayhew is conducting an investigation of the federal tax liabilities of Schonert for the years 1974–1977. The investigation began in 1977 when Mr. Smith, a Revenue Agent, examined Schonert's records. After approximately eight months of examination, Agent Smith suggested adjustments of $400,000.00 in Schonert's tax returns. Agent Smith's supervisor approved the adjustments.

Schonert's accountant, upon notification of the adjustments, disputed Agent Smith's findings and requested a district conference. During the conference, the parties failed to reach a final agreement and Schonert's representatives were informed that the focus of the investigation had changed from civil to civil and criminal. At that time, Agent Smith referred the case to the Intelligence Division of the Internal Revenue Service for possible tax evasion.

Following the referral, Special Agent Mayhew of the Intelligence Division began his investigation. In furtherance of the investigation, he subpoenaed Schonert's books and records which Agent Smith had examined previously. Mr. Horton refused to comply with the subpoena. Special Agent Mayhew, however, was able to obtain at least part of the records requested by the subpoena by an alternate means. Special Agent Mayhew contacted the counsel for Mr. Schonert, a partner in Schonert Construction, Inc. and a defendant in a related action not before this court, and informed him of the summons. Upon hearing of the contents of the subpoena, Mr. Schonert's counsel voluntarily released the requested information. Special Agent Mayhew did not inform Mr. Horton of his contact with Mr. Schonert's counsel nor did Special Agent Mayhew obtain a court order prior to taking possession of the records.

### THE MOTION TO ENFORCE THE IRS SUMMONS

The United States Supreme Court set out the standard for judicial enforcement of an IRS summons in *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The Court stated that enforcement is proper when: 1) the investigation has a legitimate purpose, 2) the inquiry is relevant to that purpose, 3) the information sought is not already in the possession of the IRS, and 4) the required administrative steps have been followed. The issues before this court concern numbers (1), (3) and (4) of the *Powell* criteria.

*The Purpose of the Investigation*

Mr. Horton contends that the instant summons was issued for the improper purpose of obtaining evidence for use in a criminal prosecution and thus violates criterion (1) of *Powell*. In *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964), the Court stated:

"[T]he witness may challenge the summons on any appropriate ground. * * [including] that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution. *Boren v. Tucker*, 9 Cir., 239 F.2d 767, 772–773."

█ The Court refined the *Reisman* rule seven years later in *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). The Court held in *Donaldson* that a summons is improper only where the sole object of an IRS investigation is to gather data for a criminal prosecution. If a summons is issued in good faith and prior to a recommendation for criminal prosecution, it is enforceable. 400 U.S. at 536, 91 S.Ct. at 545, 27 L.Ed.2d at 592, *United States v. Hodge and Zweig*, 548 F.2d 1347, 1351 (9th Cir. 1977), *Wild v. United States*, 362 F.2d 206, 209 (9th Cir. 1966).

█ In the case at bar, no formal recommendation for criminal prosecution was made even though the IRS had begun to focus its investigation on criminal as well as civil tax liability. Further, it appears that the summons was issued in good faith. The summons, therefore, was not issued for an improper purpose.

*IRS Possession of the Information*

Mr. Horton claims that Agent Smith's prior examination of Schonert's records is the equivalent of current IRS possession of the subpoenaed information, thereby violating criterion (3) of *Powell*. This claim is incorrect.

█ Past IRS access to records does not constitute current possession if development of a case demands further review of previously examined documents. *United*

*States v. Schoeberlein*, 335 F.Supp. 1048, 1059 (D.Md.1971). Furthermore, an initial IRS examination of records will not preclude subsequent review if the IRS has a different purpose in the second examination. *United States v. Schwartz*, 469 F.2d 977, 984 (5th Cir. 1972).

█ Accordingly, the court finds that previous IRS possession of the subpoenaed documents involved only preliminary civil evaluation of Schonert's tax records, that the purpose of the IRS investigation has changed from a civil inquiry to one of a criminal and civil nature, and that further development of the case demands continued IRS access to Schonert's records. Thus, the court finds that prior IRS examination of Schonert's records does not constitute current possession of the subpoenaed documents.

*Proper Administrative Procedure*

Criterion (4) of *Powell* demands that the government follow administrative steps prescribed by § 7605(b) of the Internal Revenue Code of 1954, 26 U.S.C. Section 7605(b) provides that the government shall not subject taxpayers to unnecessary examinations. Only one inspection is permitted for each taxable year unless the taxpayer is notified in writing.

█ The court in *DeMasters v. Arend*, 313 F.2d 79 (9th Cir. 1963), cert. denied, 375 U.S. 936, 84 S.Ct. 341, 11 L.Ed.2d 269, explained that courts must apply § 7605(b) narrowly. According to *DeMasters*, § 7605(b) was established to prevent situations involving uselessly repetitive procedures irrelevant to possible tax liability. An IRS investigation is never "unnecessary," however, if it contributes to any authorized IRS purpose.

*United States v. Gilpin*, 542 F.2d 38, 40 (7th Cir. 1977), addressed the necessity of written notice if the IRS examines a taxpayer's records more than once in a year: "[N]o . . . inspection notice is required if it is factually established that the Agent involved had not completed his examination when he referred the case to a Special Agent for further investigation (Citations omitted)."

█ The IRS is not seeking to subpoena records unnecessarily in the case at bar. The IRS is attempting to pursue its authorized purpose of completing an investigation for possible tax evasion. Such investigation is clearly a continuation of the initial examination of Schonert's records by Agent Smith. The IRS, therefore, has complied with the administrative steps of § 7605(b) as required by *Powell*.

*Constitutional Claims*

█ In addition to the issues addressed under *Powell*, Mr. Horton has raised questions regarding possible violation of Fourth and Fifth Amendment rights. In *Donaldson, supra*, however, the United States Supreme Court stated that the Fourth Amendment cannot defeat an IRS summons directed to a third party. As explained in *United States v. Ellsworth*, 460 F.2d 1246, 1248 (9th Cir. 1972) the Fourth Amendment has no application where a custodian of corporate records is compelled to produce records.

█ The IRS summons in the instant case was served on Mr. Horton in his capacity as the President of Schonert. The summons was directed solely toward the corporate records of the third party corporation. Mr. Horton, therefore, cannot rely on the Fourth Amendment to defeat enforcement of the summons.

█ The Fifth Amendment provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself." Because the Fifth Amendment is concerned with compulsion of the witness to testify against himself, the Supreme Court in *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), reasoned that the privilege is a personal one. It adheres to the person and not to the information that may incriminate him.

In accordance with the personal nature of the privilege, the courts have ruled that a corporation holds no Fifth Amendment

privilege. *United States v. Osborn*, 561 F.2d 1334, 1338 (9th Cir. 1977). In addition, the Supreme Court stated in *Essgee Co. v. United States*, 262 U.S. 151, 158, 43 S.Ct. 514, 67 L.Ed. 917 (1923), that because a corporation does not enjoy the same immunity as individuals:

> "[A]n officer of a corporation in whose custody are its books and papers is given no right to object to the production of the corporate records because they may disclose his guilt."

■ Mr. Horton was the President of Schonert at all times relevant to the instant matter. Since *Essgee* holds that corporate officers are not protected by the taxpayer's Fifth Amendment privilege, Mr. Horton's claim of that privilege cannot prevent production of the summoned documents.

■ Mr. Horton has attempted to raise additional claims based upon the Ninth, Tenth and Fourteenth Amendments. However, he has failed to substantiate the claims with facts or legal arguments. "It is well established that [constitutional amendments] protect against real dangers, not remote and speculative possibilities." *United States v. Cromer*, 483 F.2d 99, 102 (9th Cir. 1973). Accordingly, the court finds that Mr. Horton's rights under the Ninth, Tenth and Fourteenth Amendments have not been violated.

### THE MOTION FOR RETURN OF SEIZED PROPERTY AND SUPPRESSION OF EVIDENCE

Mr. Horton claims, on the basis of § 7609 of the Internal Revenue Code of 1976, 26 U.S.C., that the IRS improperly obtained Schonert's records from Mr. Schonert's counsel. Mr. Horton contends that the alleged improper IRS action justifies a return of all documents obtained from the counsel and suppression of evidence obtained from examining said documents.

Section 7609 insures that a party will receive notice if a third party record keeper is summoned to produce records concerning the business affairs of the party. Following notification the party has the right un-der the statute to stay compliance with the summons by notice in writing to the third party record keeper. Furthermore, § 7609 precludes all examination of the summoned records subject to the statute before the expiration of fourteen days. This allows adequate time for the party to notify a third party record keeper to stay compliance.

The purpose of § 7609, according to the Congressional Committee Report accompanying P.L. 94–455 is to facilitate a taxpayer's opportunity to raise defenses to a third party summons. Previously, a taxpayer could refuse to comply with a summons served upon himself yet he would have difficulty preventing production of the desired documents by a third party record keeper. Such third party record keepers traditionally included banks, accountants and attorneys. Under § 7609 the taxpayer is insured a chance, through adequate notice, to raise all relevant issues regarding the propriety of the summons. The statute allows the taxpayer "to stand in the shoes of the third party record keeper."

■ Although § 7609 protects a taxpayer's rights regarding third party record keepers summoned to produce records of the party's business affairs, it does not include parties not subject to the summons. As explained in the Congressional Committee Report, § 7609 is not intended to expand the substantive rights of parties.

■ In the instant case, the IRS obtained certain of Schonert's records from Mr. Schonert's counsel. The counsel, however, had never been summoned to produce the disputed records. Furthermore, the IRS notified the counsel that a summons was outstanding against Schonert. Counsel's response was voluntary production of the worksheets in his possession. Because § 7609 expressly addresses situations involving third party summonses where the third party is legally compelled to produce the requested documents, the statute cannot apply to the situation presented here.

The summons will be enforced. Any information regarding Schonert obtained by

the IRS from Mr. Schonert's counsel may be retained and evidence arising from examination of that information will not be suppressed.